Good morning. Good morning, Your Honor. The next case on the calendar is Patricia Kennedy v. Floridian Hotel. Here for Ms. Kennedy is Philip Cullen, and for Floridian Hotel is Kenneth Minerly. Mr. Cullen, would you like to save five minutes for rebuttal? Yes, Your Honor. Are you ready to proceed, Mr. Cullen? Yes, Your Honor. You may proceed. Thank you. If it pleases the Court, my name is Philip Cullen. I'm here on behalf of Patricia Kennedy. This is an Americans with Disabilities Act case that involves two things. Physical barriers, which was dismissed by the Court on a 12B1 motion, and internet violations, which was dismissed for claim splitting. Now, with respect to the first issue, the entire argument comes down to what does one have to plead and prove to obtain relief under the Americans with Disabilities Act? From what I've been able to determine, both from reading the lower court's opinion and Mr. Minerly's brief, the only area of dispute is whether or not a real threat or future injury is an element of the cause of action. If it is an element of the cause of action, the trial court erred in counting only the remaining three items, that is a disability, a public place of accommodation, and an injury. If it is not, the defendant prevails on that point. Now, the reason why that is an element of the cause of action is that unless you prove an injunction, you get no relief, period. If the three elements that the court relied upon were the only elements of the cause of action for the Americans with Disabilities Act, the plaintiff would have won in a lower court, which he did not. The one case I think that most directly addresses that issue, and there are a whole bunch of them, is the Wooten case, which specifically said that a plaintiff must both allege and prove a threat or future injury in order to get a relief under the ADA. That same thing was followed through more recently in Marot, amongst a whole bunch of other cases. Now, tracking back, what the court then did was the cause of action, if it includes a threat or future injury, is inextricably intertwined with the jurisdiction of the court. That means the court could grant a motion for summary judgment in theory, but what it could not do under summary judgment is make credibility determinations or rule on merits. What the court had to do, counsel, is to convert the summary judgment into a 12B1 inquiry about subject matter jurisdiction. That is to say whether the case was justiciable at all, or at least the count that we're talking about. The issue of justiciability is always before the raised by a party or not. If there was a serious and substantial claim that the claim was non-justiciable, I'm talking about the physical premises claim in count one, then the district court was obliged by controlling law to address. If she was, and there was a factual attack on it, then she was surely free to find facts under 12B1. It wouldn't be the first time that a district court judge did just that. I guess what I'm asking you is, why didn't she properly convert this Rule 56 issue with regard to the first count, the physical premises count, into a 12B1 motion to dismiss for lack of subject matter jurisdiction? If she could do that, why couldn't she, as a consequence of that, make findings of fact? The answer to your second question is the judge could make findings of fact were the conversion proper. The conversion, however, was not proper. The reason being that the facts of sustained jurisdiction, i.e. the threat of future injury, are part and partial of the cause of action. Under Dunbar and Morrison, you simply cannot do that. The court cannot make determinations of fact. The procedure is, it has to be treated as summary judgment or wait for trial. Of course, it wouldn't be the first time that a jurisdictional inquiry overlaps with the merits. This is a problem that courts frequently have here. Let's go to the merits of that for me, if you would. Let's just assume, for the purpose of my question, she properly converted 56 into 12B1 and was entitled to review whether or not what you had presented in fact presented an actual and immediate injury rather than some future harm that was indeterminate and unclear so that the issues weren't properly framed in this case. Was she right or wrong about that? If the conversion was proper, the judge could, Judge Ngura could have done what she did, which was taking into account credibility and consider the merits as opposed to simply deciding whether or not there were issues of fact. So your whole argument on the first count is that she wrongfully converted it, not that if she converted it, she did something wrong in the That's correct, Your Honor. Okay. Help me with the other count. Count two, the online reservation issue. That one, she didn't go off on jurisdiction, but rather she went off on claim splitting. That's correct. Not a jurisdictional determination, and it does have a merits determination. That's correct. Your Honor, in that case, this court's decision in Vanover is the one that's Vanover, the facts there differ from the ones in this case. And what, according to Vanover, in order for claim splitting to apply, you have to have the same parties with the same basic claim in the same court at the same time. Now, in this case, we first and foremost, in Vanover, all of the causes of action accrued prior to the first lawsuit being filed, which is not the case here. Under Maraud, the causes of action for the claims for the internet violations didn't occur until later when Ms. Kennedy encountered the defendant's new and improved website and then encountered the third party booking sites, and the latter were not even arguably contained in the first lawsuit. The second thing is the timeline is these claims, I should say, were not pending at the same time. And the reason was that the the first case was dismissed on December 7th, 2018. This claim splitting argument didn't come up until April 3rd, 2019. They were not pending at the same time. Now, the other the crucial thing, though, is under the basic holding of Vanover was that the second case would be barred only if the first one had gone to a final judgment, theoretically, and would then bar the second. And in this case, the causes of action, there were different causes of action. The second causes of action, the second didn't even occur at the first time. Thus, res judicata or claim preclusion would not bar the second case. And unquestionably, it would not bar the claim with respect to the third party booking sites, which were not involved. Mr. Kahn, may I ask you a question regarding two unpublished cases that this court had, where we upheld the district court's dismissal of your client's 88 claims in similar situations, finding that that she lacks standing? Why shouldn't we follow those cases? Your Honor, aside from the fact that they're unpublished, I think that the Judge Barquette's analysis in the American Kennel Club case, I believe in dissent, was correct, that these cannot be squared with cases such as Schatz, holding that all needs to be established is an intent to return the property, and that is a published decision. The same thing as Stevens, and it was again reiterated in a later case. You're just, you're referring to a dissent. That's right, Your Honor. Right, well, but dissent is not the majority, correct? That's correct, but I'm sorry if I was less than clear on my point. I was agreeing with her argument, not that it was suggesting it was binding on this court, and what her position was, was that those two decisions, if I'm thinking of the same ones the court was thinking of, were later than Schatz and later than Stevens, and under 11th Circuit rule, Schatz and Stevens would be controlling, and the unpublished decision would not be. Let me ask you a question regarding the record. Is there anything in the record that showed that your client attempted to reserve a room at the Floridian within the time frame in question for the April festival? There isn't anything in the record, correct? Your Honor, my recollection is that there is, that she tried to call up the hotel, tried to make a reservation, or got in touch with one way or another, I should say, and found out that you could not make a reservation because it was too far in advance. Let me ask you just one final question. I know you're a little bit over your time, but I was curious about your view on this. Insofar as the district court dismissed count one of your complaint on justiciability grounds, standing grounds, I noted that she dismissed it with prejudice. Could she dismiss with prejudice if she's simply saying the court didn't have the power to entertain it in the first place? Your Honor, my understanding is that's the result, that's the effect. It's a dismissal with prejudice. Well, I don't see how you could dismiss with prejudice if it's done on jurisdictional grounds. Usually, a dismissal with prejudice would arise in the context of something like a 12b6 matter. It fails to state a claim for one reason or another. But when a court finds that it doesn't state or create an actual case or controversy, the court is saying, we don't have the power to entertain it at all. We can't adjudicate it. Therefore, we're dismissing it, which is different from saying we're ruling on the merits. You understand what I'm saying? Even if she were right in dismissing count one for lack of standing, she may have been wrong for dismissing it with prejudice. Judge, if I understand what you're saying correctly, I agree with you, but I don't think that's the law. Okay. You mean you think you could dismiss a case with prejudice when you're dismissing it because you don't have subject matter jurisdiction to handle it? Your Honor, I've seen that in any number of court decisions, which is the basis of my view of the matter. But other than that, I agree with the court. Let me cite you going all the way back to the old Fifth Circuit. Hill versus the city of and essentially ends the plaintiff's lawsuit. Whereas a dismissal on jurisdictional grounds alone is not on the merits and permits the plaintiff to pursue his claim in the same form or some other form. It is not a dismissal with prejudice. Your Honor, in this particular case, with the facts of the jurisdictional facts and the merits being intertwined, a decision that the plaintiff did not have standing, i.e. no intention, immediate threat of future injury, determines the case on the merits. Okay, I've got it. Thank you very much. I have one quick record question like Judge Figueroa. She says she went to the Floridian one time and was there two hours. Is that correct? Yes, Your Honor. And but she didn't spend overnight. I have a room. No, she rented a room. She did not spend the night. All right. Is there a record? Did you pay for the room? I mean, sorry. Did she pay for the room for that one time when she went there two hours? My understanding is she did, Your Honor, but I don't know whether that's in the record or if it's in the record. Counsel, when you were talking, when I asked you the questions about the unpublished cases, were you suggesting that they didn't refer to shots? I was confused by your argument. Your Honor, under the 11th Circuit rule that the earlier case controls shots and cruises would control over the two unpublished cases, assuming other ones. I understand that. But both of the unpublished cases talk about shots. They refer specifically to shots in affirming the dismissal with prejudice for your client's lack of standing. So that's why I'm kind of confused. No, my argument was based on Judge Marquette's dissent. I see. All right. I understand your argument. Thank you. Thank you, Your Honor. All right. We've let you go over. You'll have additional time for rebuttal. Mr. Minerly, are you ready to proceed? Yes, Your Honor. If it pleases the Court, Kenneth Minerly on behalf of Floridian Hotel. With regard to the timing of this case, I do believe it's important to have the dates in the record. It's October 17, 2018. And then on December 7, Floridian 1 was dismissed. December 7, 2018. While Floridian 1 was pending, Ms. Kennedy filed Floridian 2, which was filed on October 17, 2018. So before Floridian 1 was dismissed, Ms. Kennedy went and filed a lawsuit, the second Floridian 2, alleging in count two of Floridian 2, a violation of the ADA with regard to the online reservation system, which was the basis of her claim in Floridian 1. And the only thing that she added to Floridian 2 was now she alleged architectural barriers in addition to the online reservation system. Right. So it could have been, this speech could have been just an amended complaint. Yes, Your Honor. And I think it's very important if you look at the Vanover case, which Mr. Cullen referred to, and which I believe is the leading case in this circuit on claim splitting. And the Court goes through a lengthy discussion. But one of the most important things is it explains that the claim splitting doctrine thereby ensures that a plaintiff may not split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit if the first fails. So I would construe that's exactly what Ms. Kennedy was trying to do, was basically buy an insurance policy by filing the second suit while the first suit was pending, so that in the event she were not to be successful in the first suit, she would have this as a backup. Is there a reason why we shouldn't follow the analysis of, I know they're unpublished cases, but they are really almost identical in terms of the fact pattern with regards to Ms. Kennedy's standing? There is no reason why you should not follow those cases. I think those cases, although they're unpublished, have come to take on almost the significance of being published, in that they're relied upon by this Court, and also relied upon by district courts. To Mr. Middley, before you move on, assuming arguendo that the district court properly dismissed count one, the lack of standing, could she dismiss it with prejudice? Yes, Your Honor, because it's not a jurisdictional finding, it's a finding of standing, and in the other cases that the unpublished opinions, I believe those were dismissed with prejudice as well. I don't understand the statement. It's not a jurisdictional finding, it's only standing. Standing is, along with rightness and mootness, are the three props upon which justiciability rests. When we speak to standing, we ask the question about whether there was a sufficiently concrete injury in fact to allow the Court to exercise its power. I'm confused. Your Honor, there has to be a concrete injury in fact. That first element would be met when Ms. Kennedy went to the hotel and confronted the barriers. No, but in this case, I guess the relief being sought here is purely prospective and injunctive. She's not suing for damages, right? Correct, and in the case of injunctive relief, there's a further requirement that you must find a likelihood of future harm that will be redressed by the relief, and that's where this standing issue comes into place. You have to have that standing at the time you file the lawsuit, and as we submitted in our brief, at the time the decision is decided or the judgment is made, and that's why a dismissal with prejudice is appropriate, because when you seek injunctive relief, and the Lujan case speaks of that, you need to have a concrete and definite intention to show that there's going to be future harm. That's an element of the remedy, not necessarily an element of the cause of action, and I think that's a distinction. And in the cases we cite that the remedy, this standing issue or this intent to return is not intertwined. The irony here is your colleague agrees with you that if she properly dismissed the lack of standing, it necessarily is with prejudice, although offers a slightly different cast on why. He says the reason is it necessarily intertwines with the merits determination, that the jurisdictional question, as decided by the district court, answers the merits question, and therefore it's necessarily with prejudice. That's his reason why, but maybe you both agree the dismissal is with prejudice, so I'm not going to make more of it than if both of you agree on that. So help me with whether she properly converted, the district court properly converted this rule 56 motion for summary judgment into a motion for dismissal on the grounds that there was no jurisdiction for lack of standing. If you look at the appellant's brief and their rule 56 motion to a 12B1 motion per se, what they're taking an issue with is that the element of her future intent to return is somehow intertwined with the cause of action, which we submit it's not, but the conversion itself they're not taking issue with, I would submit under the brief, and I think that was proper under the circumstances. Although, you know, but that's not how I quite heard him to make his argument, at least orally. I heard him to say something quite different. We will get a chance to ask them, but in the brief, I would submit if you look at his brief, the issue is whether she improperly applied the standard by making a credibility determination, but there was, I don't believe they argued that it was improper to convert it. It's just once it was converted, she applied the improper standard, which I think is a distinction. And I think with regard to the conversion and the standard she applied, we have guidance from this circuit, and that was correct. And we have, and that is in the Houston versus Murad supermarkets case, which Mr. Cullen referred to, which is the 11th and in that case, the issue was Mr. Houston's standing. And the court spoke that, however, in factual challenges to subject matter jurisdiction, a district court can consider extrinsic evidence, such as deposition testimony and affidavits. And so doing a district court is free to weigh the facts, and is not constrained to view them in the light most favorable to the plaintiff. And in light of that teaching, that's exactly what Judge Ongaro did in this case. She had before her Miss Kennedy's declarations, she had before her three declarations, she had before her two depositions, and she reviewed those depositions, and she was free to weigh the facts, which she did. Part of our position is that Mr. Cullen is arguing that there was a credibility determination made, and we submit that it would have been proper to rule the same way, even on the rule 56 standard, because there was no need to make a credibility determination that based on the undisputed facts presented by Miss Kennedy, that the court would have been correct ruling as a matter of law that the Houston factors had not been met on the issue of standing. And keep in mind, Your Honor, that the plaintiff has the burden of coming forward with proof to show by preponderance of the evidence that she has a future likelihood of the requisite, concrete intention to return to the property, so as to allow for the only relief that can be granted, which is injunctive relief. And even in Mr. Cullen has argued that the court made credibility determinations. The court in its order said, in her order said, it could make credibility determinations. But what it found was, I submit, was that she couldn't credit Miss Kennedy's testimony to meet the standard that was required to show the Houston factors for standing, which are set forth in the brief and what needs to be shown, proximity, prior patronage, proximity to the location, and that she, these general allegations in her declaration, that she is going to visit in the near future without any specifics as to why or how or what would cause her to visit in the near future, as a matter of law were insufficient. And we've had other cases, some of the unreported decisions with which I believe, Judge LeBlanc, love love love, sorry, was stated, hold that, and the court have made those decisions. So, you know, Can you help me on the facts about the collateral evidence she shows of alleged intent to visit? We have that one comment about the reservation. She said that she made only one call to make a reservation. They said it was too soon. Do you know how much in advance of the festival that was? I believe it was in October when she visited the hotel. In the record, she said that she was visited the hotel October 8th and 9th, and that she tried to make a reservation on or about that time for April, and it was too far in advance of the hotel. I mean, too far in advance of the festival, and she didn't make a reservation. Okay, and then what about, she said she went to the hotel one time and she was there two hours. Yes. And, and my question to opposing counsel was, did she actually rent a room? Everybody can see she didn't spend the night. I don't. What was that about? What do we know from the record about that two hour visit? All we know from the record is we don't know to answer your question. There's nothing in the record. If you read her deposition, she was asked why she went to the hotel. She said to, for standing. She needed to do it for standing, but just visiting one time doesn't create standing. You have to have the concrete intention to return again. Yes, that's what I'm trying to find out. There's one thing to be there for two hours. It's another thing to rent a room, and what you're telling me, there's no affirmative evidence in the record that she rented and paid for a room. That is correct. She was, I believe her testimony is she checked in and just stayed there two hours. That's in the record. She says checked in. She didn't have any evidence of a receipt. There's no evidence of receipt or payment or anything to show. No, no. And, and this is a good point if I may, because this would be a good example of what would be intertwined with the cause of action where the court were to dismiss the case because she said, I went to the hotel and I checked in and the hotel presented evidence that no, there's no record of a Miss Patricia Kennedy checking in on the date that she said she checked in. Then that would be a sort of conflicting testimony because one of the is that she encountered barriers. So that would go to the elements of the claim, whether in fact she encountered a barrier. And if that was what was before judge on Garo, and there was conflicting testimony, we have no record. She has a declaration that says I was there. I checked in. That would have been improper to dismiss for lack of standing on the grounds that she didn't encounter any barriers. And that's the type of intertwined. And if you look at the cases cited by the plaintiff, they all go to some element of the claim in the, the, the Wayne case that they cited versus St. Lucie, the court said we have insufficient evidence. Didn't say we couldn't rule, but so we had insufficient evidence in Wichman. The question was whether or not there was an ADA waiver. And if there was an ADA waiver, there would be no claim. And Hagler, the issue versus Swami, the issue was whether or not the property was now ADA compliant, meaning there would be barriers that she would encounter. And in Bishop, and in the Barbary versus tax connect case, the issue is whether Mr. Barbary was ever to the property at all, which is similar to what my hypothetical in this case, had that in the issue was whether she had been to the hotel or not. And that was the ground for judge on Garland dismissing her case. And I would just like to go back to the claim splitting in my last 50 minutes and what someone has 50 seconds on 50 minutes. I apologize. So it has a question. I mean, and this is exactly had Miss Kennedy sought leave to amend her complaint or supplement her complaint in Floridian one. And that was denied or granted. And we ended up with the same result, we would be appealing Floridian one. And that's what the court would be deciding. So what she did is she did what is warned against and the van over case is she tried to set herself up for a second case in the event the first case didn't go well. And I'd just like make one analogy if it was a barriers case and she and she had gone to a parking lot and saw that there wasn't disabled parking and she went other times and say there had been a spot that wasn't compliant. It would still be the essential elements of the claim would be a lack of parking. The essential elements are a claim against the Floridian hotel were the failure to have a compliant online reservation system. And she tried to split those causes of action in two separate cases. And the court, the standard is an abusive, abusive discretion when it comes to claim splitting, because the court has the power to control its own docket. Thank you, Mr. Minerally. Thank you, Your Honor. Mr. Collins, you have five minutes remaining for rebuttal. Thank you. Your Honor, the initial point is that the whole issue on with respect to the physical barriers is that the conversion was improper. The appellee simply cannot have it both ways. Either a plaintiff has to prove a threat of future injury, in which case it is part and the plaintiff does not have to prove a likelihood of future injury, in which case the plaintiff would have won in the court below and simply one or the other. Now, with respect to why the conversion is improper, the court cannot, when the cause of action and jurisdictional facts are intertwined, the court cannot make credibility determinations, nor can the court make findings either under either approach. Mr. Minerally has argued the trial court did one, the other, or both. Thus, the conversion was improper. Finally, with respect to the claim splitting, that was addressed in the two district court Schling cases, which are cited in my brief, where the violations were identical. On both, the plaintiff, the original case was dismissed. A second visit resulted in the exact opposite conclusion by the district court. They were different causes of action. There was no second cause of action, particularly with respect to the third party booking sites, until such time as Ms. Kennerly accounted for them. Whether or not, in other words, I don't know, I haven't read in the appellee's brief anything that says one must amend a complaint simply because one has a cause of action that arises under the same statute, even if it arises on different facts. And I think it would certainly be problematic whether or not an amended complaint would have gotten anywhere. But I don't, I don't understand why there's a separate claim, because it's good. Trip advisor, the hotel has to allow trip advisor to book book their rooms, right? I'm sorry, Your Honor. I don't understand why it's really as you say, a new claim that came because she added the trip advisor and so forth. Because the claim is the hotel has failed to have compliant online reservation system. That's the claim. Now the hotel can do that by its own system trip advisor or however they want to do it. But I don't know why the second claim is that is a new claim that didn't exist. Because because they didn't have they didn't have the ADA information either. Under under Mara, the claim accrues when the barriers encountered the trip advisor at our barriers were not encountered until a later point of time until they were encountered, there was no cause of action. And with respect to the hotels on website, they changed the website. But why wouldn't you just amend the complaint if it's the same hotel, and then you just add a party, the board, Your Honor, there wouldn't be any reason to add a party, the the if you refer to the third party booking sites, they're not owners operators. I understand that. But the so if you don't need to add a party, then you're just adding a claim to the amending the complaint against the hotel. I suppose in theory, that may have been possible. But again, there's no obligation to do it. And there's any number of cases that hold that standing exists at the the day that on the day the complaint was filed. Therefore, you would have the argument to stand she had no standing. But do you do you concede that the standard of review is abusive discretion for shame claim shifting? Your Honor? I'm sorry, I think that would apply had the court misapplied, you know, some aspect of Vanover. But I think it's a de novo review if the courts are not have been applying Vanover in the first place, which is what our argument is. Okay. Well, I don't understand why you don't encounter the barrier. When you first go on the internet, try to book the hotel, I don't care whether you go to Google or their site, or TripAdvisor or whoever, you encounter the barrier. When you first go on the internet, and the hotel has not provided a way to book a room that's ADA compliant. That's why is that not in Karen barrier to begin with? Because Your Honor, the barriers are different for each website. Because the not only must you be able to book a room, the websites must provide information concerning what, how it's how the hotel is or is not accessible. And the information is different. Yeah, but it can't be a different claim every time website. Your Honor, under Mara, that's exactly what you could do. I wrote Mara Mara didn't have anything. I don't think that's what that case is about. But anyway, thank you. You've answered the question. Thank you, Your Honor. All right, Mr. Cohen. In conclusion, you can wrap up. Your Honor, basically, my thought is the court should simply reverse on both grounds. Thank you, Your Honor. All right. Thank you, Mr. Cohen. And thank you, Mr. Minnelli. We'll take this case under advisement. And we thank you both for your arguments. Thank you. Have a good day. Thank you.